**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00115-MSK-STV

JOHN DUFFIELD and
KAYE DUFFIELD,

      Plaintiffs,

v.

MPC PIPELINES INC.,
DUFFIELD CONSTRUCTION LLC,
MURPHY PIPE AND CIVIL LLC, and
DAVID KINSELLA,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Defendants' Motion to Dismiss and, in the Alternative, Motion for a More Definite Statement (the "Motion") [#20], which was referred to this Court [#21]. This Court has carefully considered the Motion and related briefing, the case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART**.

**I.      BACKGROUND**[1]

      Plaintiff John Duffield and his wife Plaintiff Kaye Duffield (collectively, "Plaintiffs") started Duffield Construction Inc. ("Duffield Construction") in Rapid City, South Dakota

_____

[1] The facts are drawn from the allegations in Plaintiffs' First Amended Complaint [#2] ("Amended Complaint"), which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

in 1991. [#2 at ¶ 13] Mr. Duffield was a 49 percent owner and Mrs. Duffield was a 51 percent owner of Duffield Construction. [*Id*.] From 1991 to 2015, Plaintiffs built their company into a profitable business with a clientele and service base of an approximately 300 mile radius around Rapid City, South Dakota from Colorado to North Dakota. [*Id.* at ¶ 14] Mr. Duffield developed "a unique and rare skill set" in the efficient and cost-effective digging of trenches, and Mrs. Duffield ran the business profitably. [*Id.*]

In 2013, MPC Pipelines Inc. ("MPC") approached Plaintiffs to inquire about purchasing Duffield Construction. [*Id.* at ¶ 15] MPC's parent company "had a strong presence in Australia and Europe" but wanted "to establish a presence in the United States to take control of the pipeline construction business worldwide." [*Id*.] Plaintiffs offered to sell Duffield Construction to MPC for $10,000,000. [*Id*.] MPC did not make any offer to purchase Duffield Construction at that time but instead started taking on construction jobs in other parts of the United States to establish a market in the United States. [*Id.* ¶ 16]

In 2014, MPC again approached Plaintiffs seeking to purchase Duffield Construction. [*Id*.] According to the Amended Complaint, the difficulty for MPC in the negotiation was the need to gather enough capital to make a one-time payment of $10,000,000 as requested by Plaintiffs. [*Id*.] For Plaintiffs, the difficulty was "placing a true value on their company after 25 years of hard work, developing and acquiring equipment, goodwill, clientele and an annual revenue stream." [*Id*.] Defendant David Kinsella ("Kinsella"), the president and CEO of MPC, and another MPC shareholder, Tom Dermody ("Dermody"), participated in the negotiations on behalf of MPC. [*Id.* at ¶¶ 2, 17] MPC and Kinsella hired counsel and Plaintiffs retained separate counsel to assist in the acquisition negotiations. [*Id.* at ¶ 17]

Kinsella, Dermody and MPC represented to Plaintiffs that MPC would purchase Duffield Construction for (1) a one-time payment of $3,227,447.69; and (2) a share of

the contracts and revenue generated by MPC in the United States over a three year period, as follows: 3% of the first $50,000,000 in contracts and revenue generated and 1% of all contracts and revenue generated in excess of $50,000,000 in the three years following the date of acquisition.[2] [*Id.*] According to the Amended Complaint, the inclusion of the equity payment resolved both MPC's difficulty in making such a large upfront payment and the difficulty Plaintiffs had in valuing the company. [*Id.*] The equity payment also was intended to be used to satisfy any capital gains tax realized by Plaintiffs in connection with the sale of Duffield Construction. [*Id.*] According to the Amended Complaint, MPC also requested a three year commitment from Mr. Duffield to work for MPC to introduce MPC to Duffield Construction's clientele and train them with his knowledge of the business. [*Id.*]

In 2015, MPC and Plaintiffs reached an agreement pursuant to which Plaintiffs agreed to sell Duffield Construction to MPC for $3,227,447.69 plus the equity payments "and a minimum three year employment of John Duffield at an annual salary of $150,000 with full benefits." [*Id.* at ¶ 18] MPC and Kinsella's attorneys sent Plaintiffs' lawyers the following documents memorializing the acquisition agreement: "Memorandum of Understanding," a "Letter of Intent," a "Stock Purchase Agreement," and an "Employment Agreement." [*Id.*] A March 2015 appraisal conducted in connection with the acquisition appraised Duffield Construction's equipment to have a value of $2,965,000. [*Id.* at ¶ 19] Duffield Construction's accounts receivable at that time totaled approximately $350,000. [*Id.*]

Plaintiffs signed a "Stock Purchase Agreement" with MPC and Mr. Duffield simultaneously signed an "Employment Agreement" with Defendant Murphy Pipe and Civil LLC ("Murphy Pipe"), an entity connected to MPC and managed by their mutual president, Kinsella. [*Id.* at ¶ 20; *see* #20-2 ("Employment Agreement")] The Stock

---

[2] The equity payment for contracts signed up in the third year would continue to be paid through the fourth year following acquisition. [*Id.*]

Purchase Agreement included the purchase price of $3,227,447.69 but did not contain a provision for the equity payments. [#2 at ¶ 20] Instead, the Employment Agreement contained the provision for the equity payments. [*Id.*; #20-2] MPC's acquisition of Duffield Construction was effective April 30, 2015 and Mr. Duffield commenced his employment with Murphy Pipe immediately thereafter pursuant to the Employment Agreement.[3] [*Id.* at ¶ 20]

By June 1, 2015, Mr. Duffield had secured contracts totaling approximately $11.8 million, of which he was paid a portion of the equity payment. [*Id.* at ¶ 21] In August 2015, Kinsella informed Mr. Duffield that the CEO of MPC's parent company was not happy with the acquisition agreement between MPC and Plaintiffs and did not like the equity payment obligation. [*Id.*] On September 11, 2015, Kinsella informed Mr. Duffield that he wanted to "buy him out" of the equity payment obligation for $758,870. [*Id.*] Acting on behalf of himself, individually, and also as an agent for MPC, Murphy Pipe and Duffield Construction, Kinsella made multiple attempts to buy Plaintiffs out of the equity payments. [*Id.*] Mr. Duffield rejected these offers, communicating that he would receive significantly more over the next three years pursuant to the terms of the agreement. [*Id.* at ¶ 22]

On or about November 7, 2015, Kinsella requested that Mr. Duffield fly to the Denver office to meet with him and obtain a status report on the operations of Duffield Construction. [*Id.* at ¶ 23] On November 9, 2015, Mr. Duffield met with Kinsella. [*Id.*] At the meeting, Kinsella asked Mr. Duffield if he had given further thought to allowing MPC to buy out his contract. [*Id.*] Mr. Duffield responded that he had not because the offer was "not enough." [*Id.*] Kinsella immediately responded "then you are fired!" and

---

[3] Subsequent to the acquisition, Duffield Construction Inc. became known as Duffield Construction LLC. [#2 at ¶ 8] Duffield Construction Inc. and Duffield Construction LLC are referred to interchangeably herein as "Duffield Construction."

handed Mr. Duffield a termination letter that had been prepared before Mr. Duffield arrived in Denver. [*Id.*]

At that moment, Murphy Pipe terminated Mr. Duffield, claiming that it had "cause" for termination pursuant to the Employment Agreement. [*Id.* at ¶24] As a result, Murphy Pipe stated that it would not make any equity payments after November 9, 2015. [*Id.*] Plaintiffs claim that MPC's and Kinsella's "intent from the beginning" was to lead Plaintiffs into believing that Plaintiffs would receive the full value for Duffield Construction through the equity payments when MPC and Kinsella actually had "no real intent of ever paying the equity payment[s]." [*Id.*]

On February 23, 2016, Kinsella informed Mr. Duffield that he had been terminated because he failed to disclose an interest he owned in a fuel additive business and was performing work on behalf of the fuel additive business. [*Id.*] Plaintiffs contend, however, that Mr. Duffield had disclosed his interest in the fuel additive business in the disclosures made in the acquisition documentation. [*Id.*] The acquisition documents presented to MPC and Kinsella included a schedule listing all of Mr. Duffield's interest in other companies and business ventures. [*Id.*]

On or about April 27, 2016, Plaintiffs filed the instant lawsuit against MPC, Murphy Pipe, Duffield Construction and Kinsella in South Dakota state court. [#1-2] On May 31, 2016, Defendants removed the case to the United States District Court for the District of South Dakota (the "District of South Dakota"), captioned *Duffield v. MPC Pipelines, Inc.*, No. 5:16-cv-05038-JLV. [#1-1] On June 6, 2016, Plaintiffs filed the Amended Complaint in the District of South Dakota asserting the following nine causes of action: (1) common law fraud against MPC and Kinsella; (2) negligent misrepresentation against MPC and Kinsella; (3) tortious interference with contract against MPC, Duffield Construction and Kinsella; (4) breach of contract against Murphy Pipe; (5) constructive trust against Duffield Construction and MPC; (6) unjust enrichment against all defendants; (7) money had and received against all defendants;

(8) aiding and abetting against all defendants; and (9) slander *per se* against MPC, Duffield Construction and Kinsella. [#2]

On January 10, 2017, the District of South Dakota granted in part Defendants' Motion to Change Venue and transferred Plaintiffs' first eight causes of action to the District of Colorado. *Duffield v. MPC Pipelines, Inc.*, No. 5:16-cv-5038-JLV, Docket No. 23 at 19 (D. S.D. Jan. 10, 2017). The District of South Dakota retained jurisdiction over Plaintiffs' ninth cause of action for slander *per se* and granted Plaintiffs leave to file "a second amended complaint as to the slander cause of action." *Id.* at 19-20. The case was received into the District of Colorado on January 12, 2017. [#1]

On January 24, 2017, Defendants filed the instant Motion, seeking dismissal of all of the transferred causes of action, except Plaintiffs' claim for breach of contract against Murphy Pipe. [#20] Specifically, Defendants argue: (1) that Plaintiffs' causes of action for fraud and negligent misrepresentation are improperly based upon the failure to fulfill a future promise—not misrepresentation, are barred by the economic loss rule, and are not pled with particularity as required by Federal Rule of Civil Procedure 9(b); (2) that Plaintiffs' Amended Complaint fails to sufficiently plead a claim for tortious interference with contract; (3) that Plaintiffs' aiding and abetting claim is neither legally cognizable nor sufficiently pled; and (4) that Plaintiffs' claims for unjust enrichment, a constructive trust, and money had and received are all barred by the employment agreement. [#20-1]. In the alternative, Defendants argued that Plaintiffs should be required to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). [*Id.* at 14-18] Plaintiff filed a Response to the Motion on February 14, 2017 [#22] and Defendants filed their Reply in Support of the Motion on February 27, 2017 [#26].

## II.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." In evaluating such a motion, the Court must "assume the truth of the plaintiff's well-

pleaded factual allegations and view them in the light most favorable to the plaintiff."
*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted). As a result, "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556 (internal quotation omitted)).

Pursuant to Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." "A motion pursuant to Fed. R. Civ. P. 12(e) is generally disfavored by the Court." *Shankar v. Wells Fargo Bank NA*, No. 14-CV-02000-CMA-KLM, 2015 WL 870797, at *1 (D. Colo. Feb. 26, 2015). As such, Rule 12(e) motions are "rarely granted unless the complaint is 'so excessively vague and ambiguous as to be unintelligible' or defendant would be prejudiced in its attempt to answer it." *Id.* (quoting *Greater N.Y. Auto. Dealers Ass'n. v. Env't. Sys. Testing, Inc.*, 211 F.R.D. 71, 76 (E.D.N.Y. 2002)).

## III.  ANALYSIS

### A.  Fraud and Negligent Misrepresentation

 Defendants seeks dismissal of Plaintiffs' fraud and negligent misrepresentation claims on three separate grounds:  (1) that the claims are based upon an alleged failure

to fulfill a promise or future obligation and thus the representations are not actionable as fraud or negligent misrepresentation; (2) that the claims are barred by the economic loss rule; and (3) that Plaintiffs failed to plead either fraud or negligent misrepresentation with sufficient particularity as required by Federal Rule of Civil Procedure 9(b).

### 1. Future Promise

Defendants argue that Plaintiffs' fraud claim against MPC and Kinsella "is not actionable because the alleged representations concern future events, which renders it a breach of contract claim and not a fraud allegation." [#20-1 at 3] "A claim for the tort of fraud cannot be predicated upon the mere nonperformance of a promise or contractual obligation or upon the failure to fulfill an agreement to do something at a future time." *H & H Distribs., Inc. v. BBC Int'l, Inc.*, 812 P.2d 659, 662 (Colo. App. 1990). As Defendants concede, however, "[a] promise concerning a future act . . . coupled with a present intention not to fulfill that promise" constitutes actionable fraud. [#20-1 at 3; *see also H & H Distribs., Inc.*, 812 P.2d at 662]

Here, Plaintiffs expressly allege that, at the time Kinsella and MPC made the promises at issue, they did not have the intent to fulfill those promises. [*See, e.g.*, #2 at ¶ 29 ("MPC and Kinsella also made such representations when they had no intention of performing as represented.")] Plaintiffs further allege that "MPC's and Kinsella's intent from the beginning" was "to lead [Plaintiffs] into believing that they would be able to reap the full value of their company through the equity payment with no real intent of ever paying the equity payment." [*Id.* at ¶ 24] The Court thus finds that Plaintiffs' fraud claim is not premised upon the mere nonperformance of a promise but instead alleges that MPC and Kinsella made the promises at issue "with a present intention not to fulfill [those] promise[s]." *H & H Distribs., Inc.*, 812 P.2d at 662.

Defendants similarly argue that Plaintiffs' negligent misrepresentation claims "are based solely on the nonperformance of a promise to do something at a future time" and

thus are not actionable. [#20-1 at 7-8 (citing *High Country Movin', Inc. v. U.S. W. Direct Co.*, 839 P.2d 469, 471 (Colo. App. 1992))] A negligent misrepresentation claim, however, also may be premised upon a promise to perform accompanied by a present intent not to perform. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 870 (D. Colo. 1996) (citing *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1267 (10th Cir. 1989)).

Plaintiffs' allegations in support of the negligent misrepresentation claim expressly allege that MPC and Kinsella made the representations at issue "to do or not to do something when it did not actually have that intention." [#2 at 34; *see also id.* at ¶ 24 (stating that MPC and Kinsella had "no real intent of ever paying the equity payment")] The Court finds these allegations sufficient to allege that MPC and Kinsella lacked a present intent to perform at the time the relevant representations were made.[4]

    *2. Economic Loss Rule*

Defendants next argue that Plaintiffs' fraud and negligent misrepresentation claims are barred by the economic loss rule. [#20-1 at 5-6, 8] The Colorado Supreme Court "expressly adopt[ed]" the economic loss rule in *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). The economic loss rule provides that "a party

---

[4] Plaintiffs argue that their negligent misrepresentation claim also is based upon MPC's and Kinsella's representation during the negotiation process that the suitability of the terms of the agreement to Defendants was based upon "MPC's and Kinsella's personal knowledge or investigation." [#22 at 14 (quoting #2 at ¶ 34)] Plaintiffs contend that this representation concerned a present fact—whether or not MPC and Kinsella actually had sufficient personal knowledge or knowledge obtained through investigation—at the time such representation was made. [*Id.*] Plaintiffs contend that this representation appears to have been false, because the CEO of MPC's parent purportedly did not approve of the terms of the deal. [*Id.*; *see also* #2 at ¶ 21] Defendants contend that "this argument fails as a matter of law because it is inconsistent with the facts alleged in the [Amended Complaint]." [#26 at 6] The Court disagrees. Plaintiffs' allegations that MPC and Kinsella never intended to honor the promises made in the employment agreement are not necessarily inconsistent with the allegation that MPC and Kinsella represented that they had obtained all necessary approvals for the deal when they had not actually obtained the approval of MPC's parent company.

suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* The *Town of Alma* court recognized, however, that "certain common law claims that sound in tort and are expressly designed to remedy economic loss may exist independent of a breach of contract claim." *Id.* at 1263. The court then cited *Brody v. Bock*, 897 P.2d 769, 776 (Colo.1995) for the proposition that "[a] common law fraud claim is based on [a] violation of a duty independent of contract" and quoted *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo.1991) for the proposition that "negligent misrepresentation is a tort claim based 'not on principles of contractual obligation but on principles of duty and reasonable conduct.'"[5] *Town of Alma*, 10 P.3d at 1263.

The question then is whether Plaintiffs' fraud and negligent misrepresentation claims arise out of "an independent duty of care" from those established in the parties' agreements. As explained above, Plaintiffs' fraud and negligent misrepresentation claims both are premised upon allegations that MPC and Kinsella made certain promises to Plaintiffs prior to the execution of the agreements with a present intention not to fulfill those promises.[6] As *Town of Alma's* reference to *Brody* and *Keller* make

---

[5] Defendants' attempt to discount the applicability of *Keller* by arguing that the *Keller* court was not addressing the applicability of the economic loss rule thus is unpersuasive. [#26 at 4] In addition to *Town of Alma*, numerous other courts also have applied the *Keller* court's holding in addressing the scope of the economic loss rule. *See, e.g., Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1162 (10th Cir. 2008); *In re Estate of Gattis*, 318 P.3d 549, 553 (Colo. App. 2013).

[6] Defendants' reliance on *Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, No. 14-CV-00994-KMT, 2014 WL 6461350 (D. Colo. Nov. 18, 2014), and *W. Convenience Stores, Inc. v. Thielen*, No. 09-CV-02626-LTB-BNB, 2011 WL 866755, at *6 (D. Colo. Mar. 14, 2011) thus is misplaced. In both cases, the court found that the plaintiffs' misrepresentation claims were predicated upon the "mere nonperformance of a promise or contractual obligation." *Hottinger*, 20114 WL 6461350, at *3 (holding the complaint lacked sufficient factual allegations that defendants had a present intent not to perform their contractual obligations at the time the contract was entered); *W. Convenience Stores*, 2011 WL 866755, at *6.

clear, the common law imposes a duty of care to avoid fraud and negligent misrepresentation in the negotiation of contracts that often is independent of the obligations defined in the agreement. "Deciding if a common law duty differs from the corresponding contractual duty turns on whether the 'duty of care . . . was memorialized in the contracts.'" *In re Estate of Gattis*, 318 P.3d at 555 (quoting *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004)). Put another way, "[MPC and Kinsella] owed independent duties to abstain from fraud and to act with reasonable care [in the negotiation of the contracts], as long as the [contracts] did not explicitly subsume those duties." *Owens v. Nationstar Mortg. LLC*, No. 14-cv-01434-PAB-KLM, 2015 WL 1345536, at *3 (D. Colo. Mar. 23, 2015). Courts thus have distinguished between misrepresentation claims based upon representations made *prior to the execution* of the contract, which generally are not subsumed by any obligation defined in the agreement, and representations made *during the performance* of the agreement, which often are made pursuant to the terms of the agreement.[7] *See*, *e.g.*, *Level 3 Commc'ns, LLC*, 535 F.3d at 1163 (distinguishing between statements "made in fulfilling a specific duty under the contract" and "a misrepresentation that induces another party to enter into a contract"); *BRW, Inc.*, 99 P.3d at 75 (finding negligent misrepresentation made during performance of agreement barred by economic loss rule where contract required to make "verbal report" and distinguishing *Keller* which involved "negligent

---

[7] Several of the cases relied upon by Defendants addressed the applicability of the economic loss rule to post-contractual misrepresentations and thus are inapposite. *See A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 541 (Colo. App. 2011) (finding misrepresentation claim based upon allegedly false statement about ability to perform previously executed agreement barred by economic loss rule and distinguishing from representation that "leads or induces another to enter into a transaction or agreement"); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 289 (Colo. App. 2009) (finding that "economic loss rule can apply to fraud or other intentional tort claims based on *post-contractual* conduct" (emphasis added)); *W. Convenience Stores*, 2011 WL 866755, at *6 (finding misrepresentation claim based upon representations of ability to perform prior agreement barred by economic loss rule).

misrepresentation of material facts *prior to the execution of an agreement*" (emphasis in original)). Indeed, at least one court in this District has found that "[r]epresentations made prior to entry into a contract appear to be susceptible to negligent misrepresentation claims even where the resulting contract 'memorializes' the applicable duties." *Bartch v. Am. Family Mut. Ins. Co.*, No. 13-cv-01931-RBJ, 2014 WL 1924269, at *3 (D. Colo. May 13, 2014).

Here, Defendants do not argue that MPC's and Kinsella's common law duties to refrain from fraud or negligent misrepresentation in the negotiation of the contracts was "memorialized" or "explicitly subsumed" by the contracts. Rather, Defendants argue that the contracts were "the sole origin for Defendants' duty to fulfill" the allegedly false promises. [#20-1 at 5] But, this argument ignores the common law duties that arise prior to the formation of the agreement to refrain from misrepresentation in contract negotiations.

Defendants instead focus only on the subject-matter of the representations at issue and the relief sought. [*Id.*] Courts have consistently rejected this approach. *See, e.g.*, *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009) (finding that "the applicability of Colorado's rule turns on the nature of the duty allegedly breached, not the nature of the alleged damages"); *In re Estate of Gattis*, 318 P.3d at 557 (rejecting proposition that economic loss rule "trump[s] fraud claims relating to the subject matter of a contract"). As the Tenth Circuit has explained, "[e]ven if a claim asserting only economic loss could be framed as a breach of contract, it is not barred by Colorado's economic-loss rule if it rests on an independent duty of care under tort law." *Haynes Trane Serv. Agency, Inc.*, 573 F.3d at 962 (internal quotation omitted). Thus, that the representations that form the basis for Plaintiffs' misrepresentation claims embody the same subject matter as the contract is of no

consequence.[8] *Bartch*, 2014 WL 1924269, at *4 (finding that "what matters for purposes of applying the economic loss rule is whether the relevant *duty* arises in the contract. That is a much narrower question than whether the *subject matter* of a dispute is covered by the contract" (emphasis in original)).

Because the contracts at issue do not appear to memorialize or explicitly subsume MPC's and Kinsella's common law duties to refrain from fraud or negligent misrepresentation in the negotiation of the contracts,[9] the Court finds that Plaintiffs' fraud and negligent misrepresentation claims arise out of independent duties and thus are not barred by the economic loss rule.

### 3. Rule 9(b)

Defendants contend that Plaintiffs' fraud and negligent misrepresentation claims fail to satisfy the heightened pleading standards for fraud claims imposed by Federal Rule of Civil Procedure 9(b). [#20-1 at 6-7, 9] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting

---

[8] Defendants' citation to *Benton v. Avedon Eng'g, Inc.*, No. 10-CV-01899-RBJ-KLM, 2012 WL 5869126, at *9 (D. Colo. Aug. 15, 2012), *report and recommendation adopted in part*, 2012 WL 5866303 (D. Colo. Nov. 19, 2012) is misguided. The portion of the recommendation addressing the application of the economic loss doctrine to the plaintiff's fraud claim was rejected by the presiding judge, who noted that "the classic duty not to make a promise with no intention of fulfilling the promise (fraud in the inducement)" differed from the duty to perform the contractual obligations. *Benton*, 2012 WL 5866303, at *5.

[9] Defendants do not argue that the integration clause in the agreement subsumes or limits their common law duty to avoid fraud or negligent misrepresentation in the negotiation of the agreement. "[I]t is not the Court's obligation to create legal arguments for [the parties]." *Zahourek Sys., Inc. v. Balanced Body Univ., LLC*, No. 13-CV-01812-RM-CBS, 2016 WL 1377165, at *13 (D. Colo. Apr. 7, 2016); *see also Goodwin v. Bruggeman-Hatch*, No. 13-CV-02973-REB-MEH, 2014 WL 4723916, at *2 (D. Colo. Sept. 22, 2014) (finding that "an issue that is not raised in response to the apposite motions to dismiss or otherwise brought to the attention of the magistrate judge is waived"). Regardless, the Colorado Supreme Court rejected a similar argument in *Keller*. *Keller*, 819 P.2d at 73 (holding that "a general integration clause does not effect a waiver of a claim of negligent misrepresentation not specifically prohibited by the terms of the agreement").

fraud or mistake," but clarifies that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Accordingly, "a complaint alleging fraud [must] 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir.1991)). However, "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (internal quotation omitted), *quoted in George v. Urban Settlement Servs.*, 833 F.3d 1242, 1257 (10th Cir. 2016).

Specifically, Defendants argue that the Amended Complaint "does not identify who made the allegedly false representations on MPC's behalf and when or where they were made." [#20-1 at 7, 9] As Plaintiffs point out in their Response, however, the allegations make clear that all of the representations were made by "MPC and Kinsella" and that Kinsella was the individual who made these representations on behalf of MPC, as its CEO and President. [#22 at 6-7 (citing #2 at ¶¶ 2, 28)] The allegations regarding the representations upon which the fraud and negligent misrepresentation claims are based also indicate that they were made in 2015—prior to the contracts being executed on April 30, 2015—in Rapid City, South Dakota. [#22 at #6-7; *see also* #2 at ¶¶ 28, 33] In its Reply, Defendants fail to explain how these allegations are insufficient to place them on notice as to the nature of the fraud and negligent misrepresentation claims.

Instead, Defendants appear to abandon their argument regarding lack of particularity and instead argue that Plaintiffs fail to "provide any support for their assertion that they can maintain a claim based on alleged fraud when the information allegedly withheld from Plaintiffs was apparent from the face of the contracts they had

signed."[10]  [#26 at 5]  Defendants' argument appears to be a variation of that rejected above—*i.e.*, that Plaintiffs' fraud and negligent misrepresentation claims are improperly based upon allegations of a mere nonperformance of a promise or contractual obligation.

The Court finds the allegations in the Amended Complaint sufficient "to afford [MPC and Kinsella] fair notice of [Plaintiffs' fraud and negligent misrepresentation] claims and the factual grounds supporting those claims."  *George*, 833 F.3d at 1255 (internal quotation omitted).  Accordingly, this Court respectfully RECOMMENDS that the Motion be DENIED to the extent it seeks dismissal of Plaintiffs' First and Second Causes of Action for fraud and negligent misrepresentation.

## B. Tortious Interference with Contract

Defendants argue that Plaintiffs' allegations are insufficient to state a claim of tortious interference with contract against MPC, Duffield Construction and Kinsella.

---

[10] For the first time in their Reply, Defendants argue that Plaintiffs' fraud and negligent misrepresentation claims against Kinsella, individually, should be dismissed because he "was acting within the scope of his employment and in furtherance of corporate business interests."  [#26 at 5 (citing *Phillips v. Montana Educ. Ass'n*, 610 P.2d 154, 157-58 (Mont. 1980))]  As an initial matter, because an opposing party does not have an opportunity to respond to arguments made in a reply brief, arguments raised for the first time in a reply brief generally are deemed waived.  *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011).  Regardless, drawing all reasonable inferences in favor of Plaintiffs, the Amended Complaint alleges that Kinsella, although undertaking certain actions as the agent of other Defendants "with the express and implied authority to engage in the acts complained of," also was acting for his own pecuniary benefit.  [#2 at ¶¶ 26, 40]  Furthermore, contrary to the Montana authority cited by Defendants, under Colorado law, "[w]hile an officer of a corporation cannot be held personally liable for a corporation's tort solely by reason of his or her official capacity, an officer may be held personally liable for his or her individual acts of negligence even though committed on behalf of the corporation, which is also held liable."  *Hoang v. Arbess*, 80 P.3d 863, 867 (Colo. App. 2003).  The same is true under Delaware law.  *See ITW Glob. Invs. Inc. v. Am. Indus. Partners Capital Fund IV, L.P.*, No. N14C-10-236-JRJ-CCLD, 2015 WL 3970908, at *11 n.132 (Del. Super. Ct. June 24, 2015) ("Corporate executives can be individually liable for the torts they personally commit even if they were acting in their official capacity."); *see also* #2 at ¶ 6 (alleging that MPC is a citizen of Delaware and Colorado).

More specifically, Defendants contend that Plaintiffs "fail to allege who made the alleged statements and in what capacity, when they were made, how they were communicated, how the statements were fraudulent, and how Plaintiffs were damaged as a result." [#20-1 at 10]  The Court disagrees.

The Amended Complaint alleges that MPC, Duffield Construction and Kinsella interfered with Mr. Duffield's employment contract with Murphy Pipe by "falsely claim[ing] to [Murphy Pipe] that [Mr. Duffield] was not honoring his obligations under the 'Employment Agreement' and failed to disclose his fuel additive business."  [#2 at ¶ 41]  Given the allegation that Kinsella acted as the agent of MPC and Duffield Construction [*id.* at ¶ 26], the Court understands the Amended Complaint to allege that Kinsella, acting on his own behalf and on behalf of MPC and Duffield, tortiously interfered with the contract by making this false claim to Murphy Pipe.  From the context, it is clear that the allegedly false claim would have been made sometime between April 30, 2015, when the contract was executed, and November 9, 2015 when Mr. Duffield was terminated.[11]  Although Defendants contend that the Amended Complaint fails to identify how the statements were fraudulent, Plaintiffs expressly allege that MPC, Duffield Construction and Kinsella informed Murphy Pipe that Mr. Duffield had not disclosed his fuel additive business when, in fact, he had disclosed it during the acquisition transaction.  [#2 at ¶¶ 24, 41]  Similarly, Defendants contend that the Amended Complaint fails to explain how Plaintiffs were damaged as a result of this interference, but Plaintiffs expressly allege that Murphy Pipe identified Mr. Duffield's

---

[11] Defendants cite no authority for the proposition that Plaintiffs must identify how the statements were communicated and the Court fails to see how such information is necessary to put Defendants on notice of Plaintiffs' claim.  Moreover, such information likely is in Defendants' exclusive control and Plaintiffs have not yet had the benefit of discovery.  *George*, 833 F.3d at 1255 (10th Cir. 2016) (noting that "courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control").

failure to disclose the fuel additive business as the reason for Mr. Duffield's termination and thus for their refusal to make the equity payments. [*Id.* at ¶ 24]

In its Reply, Defendants argue that Plaintiffs have failed to identify "how Mr. Kinsella was acting outside the scope of his employment when he exercised a supervisory duty and reported that Mr. Duffield was not complying with the terms of his contract." [#26 at 7] Plaintiffs, however, are not required to prove their case at this stage of the proceedings and the allegations are sufficient to place Defendants on notice of Plaintiffs' theory of liability. Moreover, drawing all reasonable inferences in favor of Plaintiffs, the tortious interference claim is premised upon false claims concerning the acquisition transaction to which Murphy Pipe was not a party and thus Kinsella was acting on behalf of MPC and Duffield Construction when he shared that information with Murphy Pipe.

To the extent the Amended Complaint alleges that Kinsella made the false claim, on behalf of MPC and Duffield Construction, to himself, as an agent of Murphy Pipe, Defendants contend that such a "feat is factually and legally impossible." [#26 at 8] The only authority cited by Defendants, however, is inapposite as it did not involve an agent representing multiple entities. *See MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 886 (Colo. App. 2007) (holding that corporate defendant could not interfere with a contract to which it was a party). Here, Plaintiffs allege that Kinsella interfered with Mr. Duffield's contract with Murphy Pipe, not in his role as an agent for Murphy Pipe, but rather by sharing information to which Murphy Pipe itself did not have access, while acting on behalf of his own individual interests and the interests of MPC and Duffield Construction.

Without expressing any opinion with regard to whether Plaintiffs ultimately will be able to adduce evidence sufficient to support a claim for tortious interference, drawing all reasonable inferences in favor of Plaintiffs, the Court finds the allegations sufficient to state a claim for tortious interference and to place Defendants on notice of the basis for

that claim. This Court thus respectfully RECOMMENDS that Defendants' Motion be DENIED to the extent it seeks dismissal of Plaintiffs' Third Cause of Action for tortious interference.

### C. Aiding and Abetting

Defendants argue that Plaintiffs' claim for aiding and abetting should be dismissed because Colorado law only recognizes a claim for aiding and abetting in connection with the commission of a criminal act or a breach of fiduciary duty and neither is alleged here. [#20-1 at 10-11] In their Response, Plaintiffs do not dispute this. Instead, Plaintiffs contend that their aiding and abetting claim "really pleads the derivative theory of liability known as 'civil conspiracy' under Colorado law." [#22 at 16] "[C]ourts generally recognize that it is 'improper to dismiss a claim which raises a cognizable cause of action where that claim is merely mislabeled,'" in view of Federal Rule of Civil Procedure 8(e)'s command that "[p]leadings must be construed so as to do justice." *Zapata v. IBP, Inc.*, No. CIV. A. 93-2366-EEO, 1998 WL 717827, at *2 (D. Kan. Sept. 29, 1998) (quoting *Voytko v. Ramada Inn*, 445 F. Supp. 315, 325 (D.N.J.1978)).

"To establish a civil conspiracy in Colorado, a plaintiff must show: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as to the proximate result." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1146 (10th Cir. 2016) (quoting *Nelson v. Elway*, 908 P.2d 102, 106 (Colo.1995)). Plaintiffs fail adequately to plead the second, third and fourth elements of the claim.

Plaintiffs' recharacterized "conspiracy" claim fails to specifically identify either the specific "object to be accomplished" or the specific "unlawful overt acts" allegedly undertaken by the conspirators. Instead, the Amended Complaint vaguely alleges only that Kinsella assisted and participated in "the wrongful acts" of MPC, Duffield Construction and Murphy Pipe and that MPC, Duffield Construction and Murphy Pipe assisted and participated in "the wrongful acts" of Kinsella. These overbroad,

conclusory allegations are insufficient to put Defendants on notice of what specific object and overt acts are attributed to the alleged conspiracy.

Similarly, the Amended Complaint fails to allege facts indicating "a meeting of the minds" as to any specific object or course of action to be undertaken by the conspiracy. Plaintiffs point to allegations that each Defendant was financially motivated to deprive Plaintiffs of the equity payments and acted in furtherance of that goal. [#22 at 16-17] Missing, however, is any allegation that Defendants actually reached an agreement to undertake actions in furtherance of any conspiracy to deprive Plaintiffs of the equity payments. The Court "cannot infer from defendants' independent acts an agreement to realize that goal." *Mecca v. United States*, 389 F. App'x 775, 780 (10th Cir. 2010); *see also Henson v. Bank of Am., 935 F. Supp. 2d 1128, 1141 (D. Colo. 2013)* (finding "allegations of parallel conduct, accompanied by nothing more than a bare assertion of a conspiracy, do not plausibly suggest a conspiracy and fail to nudge ... claims across the line from conceivable to plausible" (internal quotations omitted)); *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) ("The court will not infer the agreement necessary to form a conspiracy."). The Amended Complaint's allegations regarding independent action thus are insufficient to allege a "meeting of the minds."

Accordingly, this Court respectfully RECOMMENDS that the Motion be GRANTED with regard to Plaintiffs' Eighth Cause of Action for aiding and abetting and that the claim be DISMISSED WITHOUT PREJUDICE.

### D. Unjust Enrichment and Constructive Trust

Defendants argue that Plaintiffs claim for unjust enrichment fails as a matter of law because "[i]n general, a party cannot recover for unjust enrichment by asserting a quasi-contract when an express contract covers the same subject matter because the express contract precludes any implied-in-law contract." [#20-1 at 12 (quoting *Scott v. Honeywell Int'l Inc.*, No. 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *13 (D. Colo. Mar. 30, 2015)] Colorado law recognizes two exceptions to this rule. First, "a party can

recover on a quasi-contract when the implied-in-law contract covers conduct outside the express contract or matters arising subsequent to the express contract." *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). Second, "a party can recover on a quasi-contract when the party will have no right under an enforceable contract." *Id.* (internal quotation omitted).

Defendants argue that "the Employment Agreement expressly governs the subject matter that forms the basis of Plaintiffs' claims for unjust enrichment and constructive trust."[12] [#20-1 at 12]  Plaintiffs respond that both exceptions to recovering on quasi-contract apply here.  First, Plaintiffs contend that they have alleged "bad conduct *prior to* execution of the contracts at issue." [#22 at 19]  The Court agrees. Plaintiffs' unjust enrichment claim alleges that Defendants obtained profits and equipment from Plaintiffs "by fraud and taking undue advantage of [Plaintiffs]." [#2 at ¶ 48]  As stated above, Plaintiffs have stated viable fraud and negligent misrepresentation claims based upon representations made to Plaintiffs prior to the execution of the contracts at issue.  This conduct may also form the basis of a claim for unjust enrichment (and imposition of a constructive trust) independent of the express contract.

Plaintiffs also argue that the second exception applies because it may ultimately be determined that Plaintiffs do not have an enforceable right under the contracts. Although Defendants do not seek to dismiss Plaintiffs' breach of contract claim in the instant Motion, they have not conceded their liability to the claim.  At this point in the litigation, it is thus possible that Plaintiffs "may not have a right under an enforceable

---

[12] Defendants argue that "a constructive trust is an equitable remedy that may be imposed only where a party possesses a viable claim for unjust enrichment." [#20-1 at 13 (citing *Clyne v. Walters*, No. 08-cv-01646-MSK-CB, 2009 WL 2982842, at *3 (D. Colo. Sept. 16, 2009))]  Plaintiffs do not dispute this but rather argue that they have stated a viable unjust enrichment claim (and thus may seek a constructive trust). Because the Court finds that Plaintiffs have stated a viable unjust enrichment claim, the Court need not address whether the constructive trust remedy is limited to claims for unjust enrichment.

contract."[13] *MidCities Metro. Dist. No. 1 v. U.S. Bank Nat. Ass'n*, No. 12-CV-03322-LTB, 2013 WL 3200088, at *8 (D. Colo. June 24, 2013).

Moreover, the Court agrees that Plaintiffs should be permitted to assert a claim for unjust enrichment in the alternative to their breach of contract claim at this stage of the litigation.[14] *Powers v. Emcon Assocs., Inc.*, No. 14-CV-03006-KMT, 2016 WL 1111708, at *4 (D. Colo. Mar. 22, 2016) (holding that "Plaintiffs' alternative theories of unjust enrichment [ ] should proceed at this time"); *Rader v. Elec. Payment Sys., LLC*, No. 11-CV-01482-MSK-CBS, 2012 WL 4336175, at *5 (D. Colo. Sept. 21, 2012) (denying motion to dismiss unjust enrichment claim based upon understanding that it was pled in the alternative to the breach of contract claim); *Clyne v. Walters*, No. 08-CV-01646-MSK-CBS, 2009 WL 2982842, at *3 (D. Colo. Sept. 16, 2009) (permitting plaintiff to assert "the unjust enrichment claim in the alternative to the breach of contract claim"); *Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 860 (Colo. App. 2007) (holding that "while plaintiffs may not be permitted to recover under theories of both breach of express contract and *quantum meruit*, it was not inappropriate to plead both theories of recovery in their complaint").

Accordingly, this Court respectfully RECOMMENDS that the Motion be DENIED to the extent it seeks dismissal of Plaintiffs' Fifth and Sixth Causes of Action for Constructive Trust and Unjust Enrichment.

---

[13] The case relied upon by Defendants thus is inapposite as the court there found that neither exception applied. *See Scott v. Honeywell Int'l Inc.*, No. 14-CV-00157-PAB-MJW, 2015 WL 1517527, at *13 (D. Colo. Mar. 30, 2015).

[14] Defendants cite no authority for their contention that Plaintiffs must expressly allege their unjust enrichment claim "in the alternative" in the Amended Complaint [#26 at 10] and the Court is unaware of any. To the contrary, at least one court has rejected this argument as "overly technical and unpersuasive." *Gulf Coast Shippers Ltd. P'ship v. DHL Express (USA), Inc.*, No. 2:09-CV-00221, 2015 WL 4557573, at *19 (D. Utah July 28, 2015). This Court agrees.

### E.  Money Had and Received

Similarly, Defendants argue that Plaintiffs' claim for money had and received is "based on an implied contract theory and not actionable in this case" because Plaintiffs have chosen to affirm the existence of the Employment Agreement rather than to rescind the Employment Agreement.  [#20-1 at 13-14]  Although "[a]n action for money had and received is an appropriate remedy where a rescission takes place," *Hollander v. Zito*, No. 11-CV-00499-MSK-BNB, 2011 WL 5834688, at *6 (D. Colo. Nov. 21, 2011), a claim for money had and received is not *only* available under such circumstances. Instead, to prove a claim for money had and received, "it is only necessary to show that the defendant has obtained money of the plaintiff, which in equity and right he ought to return." *Hireen v. R.W. English Lumber Co.*, 104 P. 84, 84 (1909).  Although these circumstances may arise in the context of a rescinded contract, other equitable circumstances also may support a claim for money had and received.  *See Ph. Zang Brewing Co. v. Bernheim*, 44 P. 380, 381 (Colo. App. 1896) (holding that "[i]t is wholly unnecessary to the maintenance of [a claim for money had and received] that there should be any privity between the parties, or any promise to pay"); *see also In re B & L Oil Co.*, 46 B.R. 731, 736 (Bankr. D. Colo. 1985) (stating that money had and received is "rather ubiquitous cause of action" that is "flexible in nature and is not restricted by technical rules").

Moreover, to the extent Plaintiffs' claim for money had and received is premised upon an implied contract theory, Plaintiffs should be permitted to assert it in the alternative to their breach of contract claim at this stage of the litigation.  This Court therefore respectfully RECOMMENDS that the Motion be DENIED to the extent it seeks dismissal of Plaintiffs' Seventh Cause of Action for money had and received.

### F.  More Definite Statement

To the extent Defendants' motion to dismiss is not granted, Defendants request that the Court order Plaintiffs to file a more definite statement.  Specifically, Defendants

contend that the Amended Complaint fails "to identify which Defendant engaged in the alleged conduct." [#20-1 at 15] In particular, Defendants contend that it is not possible to ascertain whether representations allegedly made by Kinsella are alleged to have been made by him in his individual capacity or as an agent of one or more of the entity Defendants. [*Id.* at 15-16] As Plaintiffs point out in their response, each cause of action asserted in the Amended Complaint specifically identifies the Defendants against whom it is being asserted and Kinsella is the only agent for MPC, Duffield Construction and Murphy Pipe alleged to have been involved in the conduct at issue. [#22 at 19-20]

Defendants contend that they "cannot formulate all defenses to which they are entitled, including dispositive defenses," but fail to articulate any specific defenses of which they are potentially being deprived. [#20-1 at 16] Rather than not understanding Plaintiffs' allegations, Defendants appear to disagree with Plaintiffs' theory of the case— *i.e.*, that Kinsella could have acted on behalf of himself and multiple entity Defendants. [*See id.* (arguing that Plaintiffs failed to explain "how Kinsella could have made a representation on behalf of himself, on behalf of MPC, and on behalf of Murphy Pipe at the same time")]

Defendants further argue that "MPC cannot admit or deny that it orally represented to [the Plaintiffs] that [it] would make equity payments because MPC cannot ascertain what oral representations form the basis of the referenced claims or who allegedly made them." [*Id.* (internal quotations omitted)] As discussed above, however, Plaintiffs have expressly set out the representations at issue and provided a location and approximate timeframe for when they were made. Plaintiffs also have identified Kinsella as the individual acting on behalf of MPC during the negotiations. Defendants fail to articulate any persuasive explanation for why this information is insufficient to allow them to meaningfully respond to the allegations in the Amended Complaint. Moreover, it is within MPC's own knowledge who participated in the negotiations with Plaintiffs and what representations those individuals made to Plaintiffs.

Accordingly, the Court finds that Plaintiffs' Amended Complaint is not so unintelligible that Defendants cannot understand or respond to it. To the extent Defendants wish to obtain more detailed information regarding Plaintiffs' claims, such information is readily available through discovery. *See* 5C Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. § 1376 (3d ed.)(noting the "overall scheme of the federal rules calls for relatively skeletal pleadings and places the burden of unearthing the underlying factual details on the discovery process").

Accordingly, this Court respectfully RECOMMENDS that the Motion be DENIED to the extent it seeks a more definite statement.

## IV. CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant's Motion [#20] be **GRANTED IN PART** and **DENIED IN PART**, as follows:

(1) **DENIED** to the extent it seeks dismissal of Plaintiffs' First, Second, Third, Fifth, Sixth, and Seventh Causes of Action for fraud, negligent misrepresentation, tortious interference, constructive trust, unjust enrichment and money had and received, respectively;

(2) **GRANTED** to the extent it seeks dismissal of Plaintiffs' Eighth Cause of Action for aiding and abetting; and

(3) **DENIED** to the extent it seeks a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).[15]

---

[15] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review." *United States v. 2121 East 30th Street*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of

DATED:  April 27, 2017

BY THE COURT:

 s/Scott T. Varholak
United States Magistrate Judge

---

the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (concluding that district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *Int'l Surplus Lines Ins. Co. v. Wyoming Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (finding that plaintiffs waived their right to appeal the magistrate judge's ruling by failing to file objections).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (holding that firm waiver rule does not apply when the interests of justice require review).